UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
− − − − − − − − − − − − − − − − − − − − − − − − − − − − − −X

UNITED STATES OF AMERICA

              v.

JOSE CABAN,

                      Defendant.
− − − − − − − − − − − − − − − − − − − − − − − − − − − − − −X

**19-CR-166 (VEC)**

## SENTENCING MEMORANDUM OF DEFENDANT
## JOSE CABAN

Meredith S. Heller, Esq.
Law Office of Meredith S. Heller PLLC
99 Park Avenue, Suite 2600
New York, NY 10016
(646) 661-1808
(646) 661-1746 (fax)
msheller@mshellerlaw.com

*Attorney for Defendant Jose Caban*

April 4, 2022

INTRODUCTION

Immediately before jury selection began in his trial, Jose Caban looked around for his family.  They were not there.  Even though he considered himself close with his family, there was a reason he often felt that he could only depend on himself.  On Instagram he posted:  "My Mom Told Me It Would Be More People At My Funeral Then My Birthday Party Cus They Rather See Me Fall Then On My Feet Im Here Tho And I'm Living." GX502-C (attached as Exhibit A).  He went through the most important experience in his life without any family there to support him.  Unfortunately, that is indicative of Mr. Caban's brief life experience.

Jose Caban stands before your Honor having been convicted of two counts of Violent Crime in Aid of Racketeering ("VICAR") and two counts of using a firearm during and in relation to a violent crime.  Since your Honor presided over the trial, this sentence memo will not rehash the facts of the case.  This sentencing letter contains background, corrections and objections to the Presentence Report ("PSR"), and argument in support of his request for a below guidelines sentence of twenty-one years.

**PROCEDURAL BACKGROUND**

Jose Caban was arrested on December 4, 2021, and was arraigned on December 5, 2019, on a two-count indictment:

Count 1:  On February 8, 2019, in the Southern District of New York, **JOSE CABAN, a/k/a "Nene,"** COREY CRAY, a/k/a "Borey," ISAIAH MOSS, a/k/a "Zaya," DEVONAIRE PRICE, a/k/a "Dev," and others, as consideration for the receipt of and as a promise and agreement to pay a thing of pecuniary value from the Jack Boyz gang, a criminal organization whose members and associates engaged in racketeering activity, including among other things, acts involving murder, assault with a dangerous weapon, assault resulting in serious bodily injury, and narcotics trafficking, and for the purpose of gaining entrance to and maintaining and increasing position in the Jack Boyz, shot at and attempted to murder gang rivals in the vicinity of East 137th Street and Willis Avenue in Bronx, NY, and aided and abetted the same, in violation of New York Penal

Law, Sections 125.25, 120.14, 110.00, and 20.00, and in violation of 18 U.S.C. §1959(a)(3) and §1959(a)(5) and 2.

Count 2:   On February 8, 2019, in the Southern District of New York, **CABAN**, CRAY, MOSS and PRICE, during and in relation to the violent crime in aid of racketeering charged in Count 1, possessed a firearm which was brandished and discharged, and aided and abetted the same, in violation of 18 U.S.C. §924(c)(1)(A)(i), (ii), (iii) and 2.

On August 19, 2020, Mr. Caban was charged in a third superseding indictment with two

additional counts:

Count 3:   On June 19, 2018, in the Southern District of New York, **CABAN**, PATTERSON and others, as consideration for the receipt of and as a promise and agreement to pay a thing of pecuniary value from the Jack Boyz gang, a criminal organization whose members and associates engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in the Jack Boyz, attempted to murder gang rivals, resulting in a victim being shot in the back and paralyzed, in the vicinity of East 135th Street and Willis Avenue in Bronx, NY, and aided and abetted the same, in violation of New York Penal Law, Sections 125.25, 120.05, 110.00, and 20.00 and in violation of 18 U.S.C. §1959(a)(3) and §1959(a)(5) and 2.

Count 4:   On June 19, 2018, in the Southern District of New York, **CABAN** and PATTERSON, during and in relation to the violent crime in aid of racketeering charged in Count 3, possessed a firearm which was brandished and discharged, and aided and abetted the same in violation of 18 U.S.C. §924(c)(1)(A)(i), (ii), (iii) and 2.

Mr. Caban initially entered into a plea agreement and appeared before your Honor on July

21, 2021, for a change-of-plea hearing.  Mr. Caban did not have any problem admitting his own

individual actions.  However, he was unwilling or unable to state that he was a member of a

criminal organization.  Mr. Caban then chose to exercise his right to trial.

Mr. Caban's trial began on October 13, 2021.  The jury returned guilty verdicts on all

counts on October 19, 2021.

On April 22, 2022, Mr. Caban will appear before your Honor for sentence.

## THE PRESENTENCE REPORT

I refer below to the final revised PSR prepared by the United States Probation Office ("Probation") dated January 10, 2022. The ¶ numbers below track the PSR.

**Outstanding Objections:**

Page 28:        In the second paragraph under the heading "Justification" Probation claims that Mr. Caban has a prior conviction for false impersonation.  As is clear from both ¶ 76 and the sentence immediately following the problematic one, Mr. Caban received an Adjournment in Contemplation of Dismissal ("ACD"), which, by definition, is not a "conviction."  The matter was dismissed.  It is unclear where Probation obtained the information about an outstanding warrant issued on January 17, 2020, but Mr. Caban was arrested and held in this matter since December 5, 2019.  It is respectfully requested that the entire paragraph on page 28 be stricken from the PSR.

**Offense Level Computation of the PSR:**

The November 1, 2018 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG §1B1.11.

Count 1: Violent Crime in Aid of Racketeering
Count 2: Use and Possession of a Firearm which was Brandished and Discharged in Furtherance of a Crime of Violence
Count 3: Violent Crime in Aid of Racketeering
Count 4: Use and Possession of a Firearm which was Brandished and Discharged in Furtherance of a Crime of Violence

Counts 1 and 3 cannot be grouped as they represent a separate harm and separate victims, and therefore must be treated as separate groups.  In reference to Counts 2 and 4, the guideline for a violation of 18 USC 924(c) is found in §2K2.4, which provides that the guideline sentence is the term of imprisonment required by statute. Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) shall not apply to this count of conviction, pursuant to §2K2.4(b)

**Count 1**: **Violent Crime in Aid of Racketeering**

**Base Offense Level:** The guideline for a violation of 18 U.S.C. § 1959 is found in §2E1.3. Pursuant to §2E1.3(a)(2), the base offense level applicable to the underlying crime or racketeering activity, which is attempted murder, should be utilized and is found in §2A2.1. Pursuant to §2A2.1(a)(1), as the offense would have constituted first degree murder, the base offense level is 33. USSG §§2E1.3(a)(2) and 2A2.1(a)(1). ................................................................... **33**

**Specific Offense Characteristics:** None. ................................................................ **0**

**Victim Related Adjustment:** None. ................................................................... **0**

**Adjustment for Role in the Offense:** None. .......................................................... **0**

**Adjustment for Obstruction of Justice:** None. ...................................................... **0**

**Adjusted Offense Level (Subtotal):** ................................................................. **33**

**Count 3**: **Violence in Aid of Racketeering**

**Base Offense Level:** The guideline for a violation of 18 U.S.C. § 1959 is found in §2E1.3. Pursuant to §2E1.3(a)(2), the base offense level applicable to the underlying crime or racketeering activity, which is attempted murder, should be utilized and is found in §2A2.1. Pursuant to §2A2.1(a)(1), as the offense would have constituted first degree murder, the base offense level is 33. USSG §§2E1.3(a)(2) and 2A2.1(a)(1). ...............................................................................**33**

**Specific Offense Characteristics:** Pursuant to §2A2.1(b)(1)(A), as the victim was paralyzed by the shooting, the offense is increased by four levels. .......................................................**+4**

**Victim Related Adjustment:** None. ...........................................................................**0**

**Adjustment for Role in the Offense:** None. ...............................................................**0**

**Adjustment for Obstruction of Justice:** None. .........................................................**0**

**Adjusted Offense Level (Subtotal):** ........................................................................**37**

**Multiple Count Adjustment:** Units are assigned pursuant to USSG §3D1.4(a), (b) and (c). One unit is assigned to the group with the highest offense level. One additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious. One-half unit is assigned to any group that is 5 to 8 levels less serious than the highest offense level. Any groups that are 9 or more levels less serious than the group with the highest offense level are disregarded.

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count 1 | 33 | 1.0 |
| Count 3 | 37 | 1.0 |
| **Total Number of Units:** | 2.0 | |

**Greater of the Adjusted Offense Levels Above:** ....................................................**37**

**Increase in Offense Level:** The offense level is increased pursuant to the number of units assigned by the amount indicated in the table at USSG §3D1.4. ...........................................**+2**

**Combined Adjusted Offense Level:** The Combined Adjusted Offense Level is determined by taking the offense level applicable to the Group with the highest offense level and increasing the offense level by the amount indicated in the table at USSG §3D1.4. ....................................**39**

**Chapter Four Enhancement:** None. ......................................................................**0**

**Acceptance of Responsibility:** Because the defendant exercised his right to go to trial he is not eligible. USSG §3E1.1. ................................................................................**0**

**Total Offense Level:** ..............................................................................**39**

PSR ¶¶53-74.

Mr. Caban is in Criminal History Category ("CHC") I.

The guidelines calculation based on a Level 39 and CHC I is 262-327 months.

**Recommended Sentence in the PSR:**

The PSR recommends a sentence of 10 years' imprisonment on each of Counts 1 and 3 to run concurrently to each other (variance) and a mandatory 10 years' imprisonment on each of Counts 2 and 4 to run consecutive to each other and Counts 1 and 3.

## ARGUMENT

**A.      Applicable Statute and Case Law**

18 U.S.C. § 3553(a) exists to ensure that courts impose sentences that are "sufficient but not greater than necessary." Among the factors which the sentencing Court "shall consider" under § 3553(a), are the following: (a)(1) – "the nature and circumstances of the offense and the history and characteristics of the defendant," and under (a)(2) "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most

effective manner." The Court must also consider the kinds of sentences available. § 3553(a)(3).

The parsimony clause of § 3553(a) calls for courts to treat the Sentencing Guidelines calculation "only as a starting point, and then craft an appropriate sentence taking full account of 'the history and characteristics of the defendant.'" *United States v. Preacely*, 628 F. 3d 72, 84- 85 (2d Cir. 2010) (Lynch, J. concurring); *see also, United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) ("a sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime."). Indeed, *Nelson v. United States*, 555 U.S. 350, 352 (2009), held that "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not presumed to be reasonable." Therefore, an individualized assessment of each defendant is necessary and has been a long-standing element of sentencing.

It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Pepper v. United States*, 562 U.S. 476, 488 (2011) (*quoting Koon v. United States*, 518 U.S. 81, 113 (1996)). This accords with the notion that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 246-247; *see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").

### B.   A Sentence of 21 Years is Sufficient, Not Greater than Necessary to Comply with Goals of Sentencing

A sentence of 21 years satisfies all the requirements of § 3553(a).  It is only slightly less time than Mr. Caban has been on Earth.  If sentenced to 21 years, he will have spent almost half his life in prison.  He will miss all the milestones that come with one's twenties and thirties.  While he does have a son, his extreme youth at the time further shows that he was not a responsible adult.  Instead of falling in love, going to school, having a career and a family, he will spend his prime years in prison.  A sentence of 21 years will provide sufficient punishment, protection for society, and will provide both specific and general deterrence, while not being greater than necessary.

### C.   Mr. Caban's Youth and Lack of a Criminal Record Should Be Considered in Fashioning a Sentence Under § 3553(a).

Mr. Caban is a very young man – he was only 20 when he was arrested.  As previously stated, he had no real interaction with the criminal justice system until this arrest.  While the convictions are for very serious crimes, [1] Mr. Caban's youth and lack of criminal history are strong mitigating factors.  Judges in this District have regularly relied on these factors in sentencing defendants to below the guidelines range.  Recently Judge Rakoff did an extremely thorough review of the laws governing sentencing youths in *United States v. Ramsay*, No. 96-cr-1098 (JSR), 2021 U.S. Dist. LEXIS 89741, at *14-32 (S.D.N.Y. May 11, 2021).  He noted that youth has long been a consideration in determining an appropriate sentence:

> In several cases since the 1980s, the Supreme Court has held, based on "the evolving standards of decency that mark the progress of a maturing society," *Roper v. Simmons*, 543 U.S. 551, 561, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-101, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) (plurality opinion)), that "youth matters in

---

[1] Mr. Caban maintains his innocence and nothing in this sentencing memorandum should be construed as an admission of guilt.

sentencing." *Jones v. Mississippi*, 141 S. Ct. 1307, slip op. at 8 (U.S. 2021).

*Id.* at *16.

It is worth quoting Judge Rakoff at length as he explains precisely why, pursuant to the

§ 3553(a) factors:

> How should courts' understanding of adolescence and adolescent cognition affect sentencing? First and foremost, Congress commands that a sentencing court "shall consider --(1) the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1) (emphasis supplied). Then, the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with" four purposes of sentencing. 18 U.S.C. § 3553(a). These purposes are "just punishment," deterrence, incapacitation, and rehabilitation, see 18 U.S.C. § 3553(a)(2), and youth matters to each of them. See Miller, 567 U.S. at 472 ("[T]he distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes.").
>
> The need for "just punishment" corresponds to the moral culpability of an offense. Adolescents' immaturity, their susceptibility to peer influence, and their dependence mean "their irresponsible conduct is not as morally reprehensible as that of an adult." Roper, 543 U.S. at 570 (internal quotation marks omitted). Thus, a "just punishment" for an adolescent is usually less severe than a "just punishment" for a similarly situated adult.
>
> Youths' immaturity -- particularly in the context of "hot cognition" decisions made in the presence of peers -- also lessens the value of deterrence because adolescents' "immaturity, recklessness, and impetuosity make them less likely to consider potential punishment." Miller, 567 U.S. at 472.
>
> The need to incapacitate also applies with less force to younger offenders because, as noted, adolescent crime is a poor predictor of future criminal behavior, both because adolescents' characters are still developing and because adolescent crime is attributable, in part, to temporary inadequacies of the adolescent brain.
>
> Finally, rehabilitation is one of the congressionally enumerated goals of criminal sentencing, and adolescents' slow but steady development of means of self-control make rehabilitation and successful reintegration into society more likely than for similarly situated adult

offenders. Moreover, Congress has "recogniz[ed] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

For all these reasons, to impose a sentence that is "sufficient, but not greater than necessary," sentencing courts should generally impose lesser sentences on adolescent offenders than on similarly situated adult offenders. And this also means that courts cannot simply treat anyone over 18 as an "adult" for sentencing purposes but must inquire whether the human being they are about to sentence is still in many respects an adolescent.

*United States v. Ramsay*, at *30-32.

**D.      The Need to Avoid Unwarranted Sentencing Disparities Between Mr. Caban and His Co-Defendants**

Another § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). 18 U.S.C. § 3553(a) "requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants." *United States v. Ghailani*, 733 F.3d 29, 55 (2d Cir. 2013). However, one of the goals of § 3553(a) is to ensure that there is consistency and fairness in sentencing.

In the instant case, Mr. Caban's co-defendants who have already been sentenced were sentenced to between 84-192 months.  These sentences far more reasonable than the guidelines range.  While Mr. Caban must be sentenced to 20 years consecutive to any sentence imposed on Counts 1 and 3, a single year on both counts, concurrent, would be more in accordance with his co-defendants' sentences.

**E.      The Conditions Mr. Caban Has Endured in the Metropolitan Detention Center ("MDC") Should Also Be Considered**

Your Honor is well-aware of the conditions Mr. Caban has been housed in over the past

two and a half years.  The physical condition of the building is really unfit for human habitation.

On February 3, 2022, Judge Sidney Stein issued an Opinion and Order granting a defendant bail

pending imposition of sentence that outlined many of the problems plaguing MDC.  *United*

*States v. Boyd*, No. 21-CR-486 (SHS), 2022 U.S. Dist. LEXIS 20015 (S.D.N.Y. Feb. 3, 2022).

In another article about the long-standing difficulties at both New York facilities, Judge

McMahon expressed her disgust at the Bureau of Prisons' complete lack of competence.  Jacob

Shamsian, *Inside the Brooklyn jail holding Ghislaine Maxwell and R. Kelly, where the toilets*

*don't work and a judge said it's 'run by morons'*, INSIDER, September 10, 2021, available at

https://www.insider.com/brooklyn-federal-jail-mdc-holding-ghislaine-maxwell-r-kelly-problems-

2021-9, and attached as Exhibit B.  The conditions that Mr. Caban has endured are inhumane and

must be taken into account in determining his sentence.

## CONCLUSION

I respectfully request that Mr. Caban be given a sentence that takes into consideration all

of the above and is sufficient but not greater than necessary to meet the requirements of 18

U.S.C. § 3553(a).  A sentence of one year on Counts 1 and 3 to run concurrently, and 10 years on

Counts 2 and 4, consecutive, will satisfy all the goals of sentencing.

Respectfully submitted,

Meredith S. Heller, Esq.

Cc:     A.U.S.A. Justin V. Rodriguez (via ECF)
        A.U.S.A. Lindsey Keenan (via ECF)